**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROBERT MYER,                                    }
                                                }     No. 1:15-cv-00071-SPB
                        Plaintiff,              }
                                                }     Magistrate Judge Baxter
            vs.                                 }
                                                }
NANCY GIROUX, DAVID E. ZETWO,                   }
STEVEN REILLY, JAMES BENTLEY                    }
and MIKE BRUMAGIN,                              }
                                                }     *Electronically Filed.*
                        Defendants.             }

**BRIEF IN SUPPORT OF CORRECTIONS
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. <u>STATEMENT OF THE CASE</u>

Plaintiff, Robert Myer ("Plaintiff"), initiated this prisoner civil rights action in this Court on or about March 4, 2015, by filing a Motion for Leave to Proceed *in forma pauperis* with an attached *pro se* Complaint.  <u>See</u> (Doc. # 1).  The motion was eventually granted on March 27, 2015, <u>see</u> (Docs. # 2-6), and the Complaint (Doc. # 7) was docketed that same day.

Plaintiff is a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC").  Plaintiff is currently confined at State Correctional Institution at Forest.  Plaintiff brings the instant action against several DOC officials and employees based on events that occurred at State Correctional Institution at Albion ("SCI-Albion").

Following the grant (Doc. # 56) of Plaintiff's Motion to Appoint Counsel (Doc. # 55), counsel entered an appearance (Doc. # 59) on Plaintiff's behalf, and a Second Amended Complaint (Doc. # 62) ("SAC") was eventually filed on September 16, 2016.  The Second Amended Complaint raises claims under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against the Superintendent at SCI-Albion, along with several other DOC

employees assigned to SCI-Albion. More specifically, Plaintiff sued Nancy Giroux, Superintendent at SCI-Albion. Plaintiff has also named as defendants David E. Zetwo, a Deputy Superintendent at SCI-Albion, Steven Reilly, the Licensed Psychology Manager (LPM) at SCI-Albion, James Bentley, a Unit Manager at SCI-Albion and Mike Brumagin, a Corrections Counselor at SCI-Albion ("the Corrections Defendants"). All Corrections Defendants are named in both their individual and official capacities. See SAC, at ¶¶ 2-5, 7.

Plaintiff alleges that his Eight and Fourteenth Amendment rights were violated when Corrections Defendants removed his Z-code or single cell status. See SAC, at ¶¶ 46-52, 61-68. Plaintiff also asserts an Eighth Amendment claim against Corrections Defendant Reilly, alleging that he failed to provide Plaintiff with adequate medical treatment for his serious mental health disorders. Id., at ¶¶ 55-59.

The Corrections Defendants now move for summary judgment on all claims in the Second Amended Complaint.

## II. STANDARD OF REVIEW

This Court has set forth the applicable legal standard for reviewing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, in the following terms:

> The purpose of summary judgment is 'to dispose of factually unsupported claims and defenses.' Omnipoint Comm. Enter., L.P. v. Newtown Tp., 219 F.3d 240, 242 (3d Cir. 2000). Summary judgment is appropriately granted in favor of the moving party if the movant can demonstrate that no genuine issue of material fact exists, such that the movant is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(a). Accordingly, to survive a motion for summary judgment, the *non-movant* must establish that there is indeed a genuine issue of material fact, which requires the action to proceed to a trier of fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(emphasis added). An issue is 'genuine' only if it would prevent a rational factfinder, when viewing the record as a whole, from granting judgment for the moving party. See id. at 586, 106 S.Ct. 1348. Regarding materiality, the substantive law identifies which facts are 'material,' meaning only those materially and disputed facts that 'might affect the outcome of the suit under the

governing law will preclude an entry of summary judgment.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Within the framework of Federal Rule of Civil Procedure 56, the moving party must first demonstrate the absence of a genuine issue of material fact by citing to relevant portions of the record, which may include 'depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, and interrogatory answers.' Fed. R.Civ. P. 56(c)(1). See also Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, a court is not confined to the cited materials and may consider all materials in the record. Fed. R.Civ. P. 56(c)(3). If the movant meets his burden, the non-movant must then point to evidence supporting the existence of a genuine issue of material fact. El v. Se. Pa. Transp. Auth. (SEPTA), 479 F.3d 232, 238 (3d Cir. 2007). But '[t]he non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way.' Id. (citing Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)). The court reviews all evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-movants favor. Omnipoint Comm. Enter., L.P., 219 F.3d at 242 (citing Anderson, 477 U.S. at 255, 106 S.Ct. 2505); Matreale v. N.J. Dept. of Military & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248-49, 106 S.Ct. 2505; Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(citing cases); Equimark Commercial Finance Co. v. C.I.T. Financial Servs. Corp., 812 F.2d 141, 144 (3d Cir. 1987).

Lynn ex rel. Lynn v. Yamaha Golf-Car Co., 894 F. Supp. 2d 606, 622-623 (W.D.Pa. 2012). See

Kazar v. Slippery Rock University of Pennsylvania, 2016 WL 1247233, *5 (W.D.Pa. 2016). See

also Evanoski v. United Parcel Service, Inc., 571 F.App'x 92, 94 (3d Cir. 2014).

### III.  ARGUMENT

**A.  The Corrections Defendants are entitled to summary judgment on Plaintiff's official capacity claims.**

Initially, Plaintiff has sued all Corrections Defendants each in their respective "individual and official capacity." See SAC, at ¶¶ 2-5, 7. However, the Corrections Defendants –insofar as they are sued in their respective official capacities– are entitled to the immunity conferred on the

States by the Eleventh Amendment.  Accordingly, they are entitled to judgment on all such official capacity claims.  See Murray v. Pennsylvania Department of Corrections, 2016 WL 7744449, at *7 (W.D.Pa. 2016), *report and recommendation adopted*, 2017 WL 151636 (W.D.Pa. 2017).  See also Hildalgo v. Pennsylvania Department of Corrections, 2017 WL 85448, at *4-*5 (W.D.Pa. 2017).   Cf. Torres v. Giroux, 2017 WL 2984284, *3, *report and recommendation adopted*, 2017 WL 2984134 (W.D.Pa. 2017))(inmate failed to state claim against Corrections Defendants in their official capacities because Eleventh Amendment bars suit); Foye v. Wexford Health Sources Inc., 2017 WL 89012, *2 (3d Cir. 2017)(same).

Further, to the extent Plaintiff might seek injunctive relief based on *Ex parte* Young, 209 U.S. 123, 129 (1908), such claims are now unavailing because Plaintiff was assigned a Z-code in 2017 at SCI-Albion, see SMF, at ¶¶ 66-71, and because he has since been transferred from SCI-Albion, see SMF, at ¶¶ 72-73.  Thus, he has been provided the relief sought; moreover, all claims for injunctive relief against DOC officials at SCI-Albion have been mooted by his transfer. Indeed, because "[a]n inmate's transfer from the facility complained of generally moots the equitable and declaratory claims," see Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993), Plaintiff's requests for injunctive and declaratory relief against the named Corrections Defendants from SCI-Albion have been rendered moot by his transfer to SCI-Forest.  See Johnson v. Wenerowicz, 440 F.App'x 60, 62 (3d Cir. 2011).  See also Sosa v. Grillo, 2014 WL 359673, *14 (M.D.Pa. 2014); Knight v. Wapinsky, 2013 WL 786339, *8 (M.D.Pa. 2013).

Therefore, each of the Corrections Defendants is entitled to summary judgment on all official capacity claims asserted in Plaintiff's Second Amended Complaint.

**B.  The Corrections Defendants are entitled to summary judgment on Plaintiff's claims under the Eighth Amendment based on the removal of Plaintiff's single cell housing status.**

4

In Count I of the Second Amended Complaint (Doc. # 62), Plaintiff alleges that his constitutional rights under the Eighth Amendment have been violated by Corrections Defendants Giroux, Zetwo, Bentley and Brumagin[1]; specifically, that the Corrections Defendants displayed deliberate indifference to his safety, by initially removing his Z-code single-cell status and by thereafter refusing to reinstate his Z-code.[2]  See, e.g., SAC, at ¶¶ 41-53.

---

[1] Initially, it must be noted that the named Corrections Defendants were not employed at SCI-Albion for the duration of Plaintiff's confinement at that institution.   Indeed, Corrections Defendant Giroux left SCI-Albion on February 5, 2017; Corrections Defendant Zetwo left on March 28, 2015; Corrections Defendant Bentley left June 18, 2016, and Corrections Defendant Brumagin left July 30, 2016.  See SMF Exhibit 55 (Perry Decl.), at ¶ 3.  Thus, there are limits to their personal involvement in the alleged wrongdoing asserted herein.  See, e.g., Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

  Indeed, Plaintiff has not specifically delineated the actions of each Corrections Defendant in his claims.  See SAC, at ¶ 6 ("Giroux, Zetwo, Bentley and Brumagin are collectively referred to as the 'Correctional Defendants'").   However, while Corrections Defendants Giroux and Zetwo were undoubtedly involved in the decision to remove Plaintiff's Z-code in May of 2014, see SMF Exhibit 10, it does not appear that they had any further involvement in any subsequent decisions that were made with regard to Plaintiff.  Further, although Corrections Defendants Bentley and Brumagin were also involved in the Vote Sheet by which plaintiff's Z-code was removed in May of 2014, id., it is apparent that they merely provided input into the decision, but were not final decision makers.  Cf. Hughes v. Miskell, 2013 WL 5488654, *2-*3 (M.D.Pa. 2013)(finding that certain defendants were not personally involved in decision to remove inmate's Z-code because they were not "authorized to assign or change housing codes, including single cell or Z–Code status.  DOC staff makes the final determination with respect to addition or removal of an inmate on Z–Code status in accordance with Section 5, ("Single–Celling ("Z" Code) and Double Celling Housing) of the DOC's 11.2.1, Reception and Classification Procedures Manual").

[2] To the extent that Plaintiff still contends that the Corrections Defendants violated their own policy and Code of Ethics, no claim is presented.  Indeed, this Court has confirmed that

    state agency guidelines do not, in and of themselves, create a right, and do not have the force of law.  See Mercy Catholic Medical Center v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004); see also Atwell v. Lavan, 557 F.Supp.2d 532, 556 n. 24 (M.D.Pa. 2007)(a prison policy manual does not have the force of law and does not rise to the level of a regulation).  As such, a violation of internal policy does not automatically rise to the level of a Constitutional violation.  Whitcraft v. Township of Cherry Hill, 974 F.Supp. 392, 398 (D.N.J. 1996)(citing Daniels v. Williams, 474 U.S. 327, 332-33 (1986); Edwards v. Baer, 863 F.2d 606, 608 (8th Cir. 1988); Jones v. Chieffo, 833 F.Supp. 498, 505-06 (E.D.Pa. 1993)).  See also Hovater v. Robinson, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993)("[A] failure

This Court has previously "recognize[d] that, in general, the denial of Z-code status, by itself, is not cruel and unusual punishment and does not rise to the level of an Eighth Amendment violation.  Seawright v. Stachelek, 1992 WL 6796 at * 2 (E.D.Pa. Jan.13, 1992), *citing* Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1986)."   Gellock v. Prison Health Services, Inc., 2009 WL 2038235, *8 (W.D.Pa. 2009).

More recently, in the specific context of an inmate challenge to the removal of Z-code status, this Court, after reaffirming its earlier pronouncement in Gellock v. Prison Health Services, Inc., *supra*, said

> [t]he Third Circuit has noted, however, that 'double celling can amount to an Eighth Amendment violation if combined with other adverse conditions.'  Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996)(finding that, if proven, allegations that plaintiffs were subject to sexual assault and that prison officials failed to protect them adequately by placing them in double cells, could establish deliberate indifference, "irrespective of whether the harm resulted from double celling or other conditions of confinement").

Mattis v. Department of Corrections, 2017 WL 6406884, at *12 (W.D.Pa. 2017).   See also Hughes v. Miskell, 2013 WL 5488654, *12-*13 (M.D.Pa. 2013).

This view is consistent with the well settled proposition that an inmate "has no constitutional right to a particular special housing status."  Booze v. Wetzel, 2015 WL 5173937,

---

to adhere to administrative regulations does not equate to a constitutional violation."); Walker v. Zenk, 2007 WL 4895973 (M.D.Pa. 2007)(adopted in part and rejected in part by 2008 WL 351250 (M.D.Pa. 2008)("[A]lleged violations of prison policies do[ ] not rise to the level of a Constitutional claim."); Estrella v. Hogsten, 2007 WL 2065879 (M.D.Pa. 2007)(holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation). Consequently, defendants cannot be legally liable simply for violating a DOC prison policy.

Rathy v. Wetzel, 2014 WL 4104946, *11 (W.D.Pa. 2014).  See also Banks v. Meck, 2013 WL 1101127 (W.D.Pa. 2013), *aff'd*, 531 F.App'x 205 (3d Cir. 2013).  See also Tarselli v. Harkleroad, 2012 WL 603219, *7 (W.D.Pa. 2012)("the failure of prison officials to follow DOC policy does not, in and of itself, result in violation of due process").  Cf. Schwartz v. County of Montgomery, 843 F.Supp. 962, 971 (E.D.Pa. 1994), *aff'd*, 37 F.3d 1488 (3d Cir. 1994)(officers' failure to observe institutional policies regarding the supervision of dangerous inmates constitutes negligence, which is not actionable in a constitutional matter).

*13 (M.D.Pa. 2015)(*citing* <u>DeFranco v. Wolfe</u>, 387 F.App'x 147 (3d Cir. 2010)(denying inmate Z-Code cell transfer retaliation claim); <u>Emile v. SCI-Pittsburgh</u>, 2006 WL 2773261, *6 (W.D.Pa. 2006)(denying inmate preliminary injunction in the form of Z-code cell status); <u>Brown v. Sobina</u>, 2008 WL 4500482 (W.D.Pa. 2008)(denying inmate preliminary injunction); <u>Messner v. Bunner</u>, 2009 WL 1406986 (W.D.Pa. 2009)(denying inmate preliminary injunction in the form of Z-code cell status)).

In <u>Mattis</u>, the inmate claimed that

> he 'has particular mental health issues (PTSD, paranoia, anxiety) that make him incompatible with a cell mate,' and that '[d]ouble celling exacerbates [his] mental health issues and makes him act out violently towards his cell partner,' noting that he has had violent altercations with his previous three cell mates. Plaintiff alleges that his 'chronic anxiety disorders … stem from a brutal beating he suffered at the hands of prison guards in 1990 that required extensive reconstructive surgery; and a brutal attack by a cell mate while plaintiff slept in the bunk during which plaintiff sustained severe injuries.' Thus, Plaintiff alleges that when he is celled with another inmate, he cannot sleep, concentrate, or function in a normal manner; he suffers 'excruciating and debilitating headaches that last for hours or days; and he becomes 'hyper-irritable, volatile, [and] violent….'

<u>Id.</u> (citations to record omitted).

Here, Plaintiff predicates his claims regarding his Z-code on "long history of aggressive assaultive behavior while incarcerated and his serious mental health disorders." <u>See</u> SAC, at ¶¶ 14, 17, 18, 22, 23, 26, 27, 28, 29, 47, 49, 50. He further expresses concern "to prevent harm from occurring to the either the health and safety of Mr. Myer or other inmates with whom Mr. Myer comes in contact." <u>Id.</u>, at ¶ 24. As compared to the inmate in <u>Mattis v. Department of Corrections</u>, *supra*, Plaintiff makes no specific claims regarding the impact on his physical or mental well-being "when he is celled with another inmate."

Initially, it is observed that Plaintiff was only double celled with another inmate from April through August of 2016. <u>See</u> SMF, at ¶¶ 30, 35-41. <u>See</u> <u>also</u> SMF Exhibit 1B. At all

other times, he was either single celled in General Population or singled celled in the Restricted

Housing Unit ("RHU") due to misconduct sanctions.  Id.  Plaintiff was removed from his double

cell in August of 2016 after he attempted to assault his cellmate, although the assault did not

occur in their cell, but in a common area in the housing unit.  See SMF, at ¶¶ 55-61.  See also

SMF Exhibit 48.  It is also interesting to note that Plaintiff received a misconduct for an assault

in of 2017, at a time when he had Z-code status and single celled at SCI-Forest.  See SMF, at ¶

75.  See also SMF Exhibit 2.

With regard to Plaintiff's claims regarding allegations of "his serious mental health

disorders," the summary judgment record reflects that Plaintiff was regularly monitored by the

Psychology staff at SCI-Albion, particularly at those times when he was in the RHU.  See SMF,

at ¶¶ 42-44.  He was assessed every time he was initially placed in the RHU and seen several

times each month he was in the RHU.  See SMF, at ¶¶ 36, 40, 42-44.  When specific issues

arose, he was placed in a POC and monitored around the clock, and discharged only after he was

seen by a psychiatrist.  See SMF, at ¶¶ 45-54.  There were no significant concerns raised in any

of these contacts, and there were no concerns or contraindications with his placement in the RHU

at any time.  See SMF Exhibits 17, 37, 42, 44, 46, 47, 49, 52.

Even during his Z-code assessment in 2017, it was determined that Plaintiff "does not

have a serious mental illness" and Plaintiff, himself, requested to be taken "off meds and

removed from MH roster."  See SMF, at ¶¶ 66-71; SMF Exhibit 53.  Nevertheless, it appears that

he was granted such status because of concerns that his persistence in refusing to take a cellmate

would lead to another assault.  See SMF, at ¶ 70 ("z code was removed.  Inmate continues to up

his [misconducts]/assaults.  Proves will do what necessary")(citing SMF Exhibit 54).

Consequently, under a traditional cruel and unusual punishment analysis, Plaintiff has not demonstrated a violation of his Eighth Amendment rights with regard to the review and removal of his Z-code in April of 2014.  See Mattis v. Department of Corrections, *supra*.  See also Frankenberry v. Ferguson, 2017 WL 2960380, *4-*6 (Pa.Cmwlth. 2017)(affirming trial court decision that removal of Z-code and consequent double celling of inmate failed to state a claim regarding a violation of the Eighth Amendment).  Thus, the Corrections Defendants –to the extent that they were involved in the removal of his Z-code or his continued confinement in the RHU– are entitled to summary judgment with respect to any claim of cruel and unusual punishment under the Eighth Amendment.

Further, to the extent that Plaintiff is also seeking to assert an Eighth Amendment claim under a theory of failure to protect, no such claim can be established.  The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).  This includes the general duty to protect prisoners "from violence at the hands of other prisoners."  Jones v. Vaughn, 2005 WL 1971869, *7 (E.D.Pa. 2005)(citing Farmer v. Brennan, 511 U.S. 825, 833 (1994).  The Supreme Court has been explicit, however, that not "every injury suffered by one prisoner at the hands of another… translates into constitutional liability for prison officials."  See Farmer v. Brennan, 511 U.S. at 834.

In an Eighth Amendment failure to protect claim, a two-prong test is applied whereby: (1) the constitutional deprivation alleged by plaintiff must be "objectively, sufficiently serious"; and (2) the defendant prison official must have a "sufficiently culpable state of mind."  Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001)(internal quotations omitted).  See also Williams v. Bledsoe, 2013 WL 5522848, *18 (M.D.Pa. 2013)("The leading case in the Third

Circuit addressing deliberate indifference in a prison conditions context is found in Beers-Capitol v. Whetzel, 256 F.3d 120 (3d Cir. 2001)").

The Third Circuit has previously held that a prisoner-plaintiff "must show that he or she faced a 'substantial risk of harm' to which the [corrections] defendants acted with 'deliberate indifference.'" Heggenmiller v. Edna Mahan Correctional Institution, 128 F.App'x 240, 246-247 (3d Cir. 2005)(citing Farmer, 511 U.S. at 828-829).  See also Wilson v. Seiter, 501 U.S. 294, 298 (1991); Hudson v. McMillan, 503 U.S. at 5; Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Helling v. McKinney, 509 U.S. 25, 35 (1993).  The Heggenmiller Court went on to define "deliberate indifference," stating that "this level of actual knowledge requires that 'the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Heggenmiller, 128 F.App'x at 245 (citing Farmer, 511 U.S. at 837).

It has also been observed that,

> [b]y including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim.  See Jones v. Beard, 145 F.App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when 'analyzing deliberate indifference, a court must determine whether the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 841, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  A prisoner plaintiff must prove that the prison official "knows of and disregards an excessive risk to inmate health or safety."  Id. at 837.'  Garvey v. Martinez, 2010 WL 569852, at *6 (M.D.Pa. 2010).

Keith v. Deleo, 2013 WL 5874870, *7 (M.D.Pa. 2013).

Furthermore, "even if it could be concluded that [the defendants'] conduct was somehow unreasonable, 'reasonableness is a negligence standard' and negligence cannot give rise to an

Eighth Amendment failure-to-protect claim." Pagels v. Morrison, 335 F.3d 736, 742 (8th Cir. 2003)(citing Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998). See also Williams v. Sweeney, 1997 WL 177800, *4 (E.D.Pa. 1997)(quoting Freedman v. City of Allentown, PA, 853 F.2d 1111, 1115 (3d Cir. 1988)("even if the defendants were negligent [regarding the protection of an inmate] this was not sufficient to establish liability"); Jones v. Vaughn, 2005 WL 1971869, at *8 (citing Estelle v. Gamble, 429 U.S. 97, 105-106 (1976)("[m]ere negligence or inadvertence will not satisfy the deliberate indifference standard and cannot constitute a violation of the Eighth Amendment"); Davidson v. O'Lone, 752 F.2d 817, 826 (3d Cir. 1984)("because of… the purpose and essence of §1983" negligence claims are not cognizable under this provision).   The Seventh Circuit has taken this long-established standard once additional step, holding that even a showing of gross negligence is insufficient for establishing deliberate indifference in the context of a §1983 failure to protect claim.   See Fisher v. Lovejoy, 414 F.3d 659, 662 (7th Cir. 2005)(citing Farmer 511 U.S. at 835); James v. Milwaukee County, 956 F.2d 696, 699 (7th Cir. 1992)("proving deliberate indifference … requires more than a showing of negligent or even grossly negligent behavior").

In any event, Plaintiff's allegations regarding the deliberate indifference in failure to protect Plaintiff fail to establish a claim against any Corrections Defendant because Plaintiff is only asserting hypothetical or speculative danger.   See, e.g., SAC, at ¶ 24 ("Despite having actually known and been aware of the excessive risk to Mr. Myer's health and safety (and the health and safety of other inmates with whom Mr. Myer comes in contact), no Defendant took any reasonable steps to prevent harm from occurring to the either the health and safety of Mr. Myer or other inmates with whom Mr. Myer comes in contact").

Indeed, rather than alleging that he has been the victim of an assault at the hands of another inmate following the removal of his Z-code, Plaintiff has only presented a speculative claim that he might be assaulted by a hypothetical cellmate.  Id.  Nevertheless, Plaintiff has not and cannot allege that he was actually at risk from an assault from a hypothetical cellmate because he has consistently refused to take a cellmate.  See SMF, at ¶¶ 35-38.

Even in situations where an actual attack or assault has occurred, courts have consistently declined to find deliberate indifference where the only evidence is of generalized or speculative danger.  For example, in Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2012), the inmate-plaintiff sought to bring a failure to protect claim under two scenarios.  As cogently discussed in the subsequent decision in Buckley v. Kowalski, 2015 WL 179385 (D.N.J. 2015),

> To illustrate this crucial distinction between: (a) a "plausibility" scenario (ensuing from an officer's actual awareness of the excessive risk to the inmate's safety); and (b) a "mere possibility" scenario, the Court of Appeals in Bistrian reflected on two different injuries suffered by the very same plaintiff.
>   There, the inmate Peter Bistrian, being housed in a special housing unit ("SHU"), was recruited by prison officials to assist the prison's Special Investigative Services ("SIS") and FBI agents. Since Bistrian, being an orderly in the SHU, was asked by other SHU inmates (who were known gang members investigated by the FBI) to pass their notes from one another, the SIS/FBI officers directed Bistrian to bring those notes first to the SIS office (for photocopying and investigation) and then deliver the notes to the intended addressees.
>   Unfortunately, the untidy SIS operations resulted in numerous occasions when the photocopied notes (rather than the original notes) were returned to Bistrian for delivery to the addressees, which put the gang members on notice about Bistrian being an informant.  When the gang-member inmates began expressly threatening Bistrian that they would harm him as soon as they see him in the recreation yard, Bistrian advised the prison officials of those threats.  Yet, the very next month, Bistrian was placed in a locked recreation yard pen with those gang members, and they beat him unconscious and continued beating him after he passed out, causing Bistrian a dislocated left shoulder, broken teeth, and multiple contusions and lacerations to his head and face ("First Scenario").
>   Four months later, Bistrian was put in the recreation yard with another inmate (who was not related to the gang-members that injured Bistrian, but that inmate had a history of violence because he was frequently –but randomly– attacking other detainees, and the prison officers were aware of those attacks).  That inmate

attacked Bistrian with a razor by slashing and cutting Bistrian's face, arms and legs ("Second Scenario").

  Bistrian sued, seeking damaged on the basis of these two scenarios and claiming failure to protect in both instances.

  Examining these two scenarios, the Court of Appeals concluded that the First Scenario alleged a sufficiently plausible failure-to-protect claim, while the Second Scenario asserted an insufficient claim, since it was based on a mere possibility of harm. The <u>Bistrian</u> Court explained as follows:

> [W]e conclude that keeping Bistrian in the SHU was itself not unreasonable, but ... we conclude that Bistrian state[d] a plausible failure-to-protect claim [in the First Scenario].... [P]utting him in a locked recreation area with [the gang members] posed a substantial risk of serious harm because (a) [the gang members] knew of Bistrian's cooperation with prison officials plus (b) [the gang members] had a violent criminal past and had previously threatened to attack Bistrian in the recreation yard because of that cooperation.... [Prison] officials were deliberately indifferent to the obvious risk posed because they made no attempt to prevent his placement in the yard with [the gang members] despite the fact that ... Bistrian ... repeatedly advised the officials responsible for the photocopying operation of the threats [that the gang members] made. [Finally,] Bistrian [sufficiently] ple[d] causation: [the gang members] violently attacked him ... in the recreation yard because he cooperated with prison officials [in exposing their gang— relations].... We acknowledge that when inmates claim they are in danger, they confront prison officials with an arduous task. Prisoners may feign their fear of physical harm simply to manipulate a transfer, in the hope, for example, of obtaining more desirable living arrangements. But [in the First Scenario], Bistrian sets out sufficient factual allegations ... radically different from an out-of-the-blue and unadorned "I'm-in-trouble" entreaty.... Given [the SIS/FBI's] familiarity with the [photocopying] scheme and the players involved, [Bistrian's facts show that it was] plausible that they knew Bistrian's cries for help were legitimate and that he faced a substantial risk of serious harm. After all, the genesis of the [photocopying] operation was a desire to assist an FBI investigation into violent criminal activity by [the gang members] that included, among other things, substantial witness intimidation....
>
>  [In contrast,] Bistrian does not allege that [the inmate who attacked him in the Second Scenario] had any connection to [the gang members] or that [this inmate] otherwise attacked [Bistrian] because he was an informant.... Bistrian [merely] refers to [this inmate's] "history of violent assaults against other inmates" ... We cannot conclude on these allegations that prison officials were deliberately indifferent to such a speculative risk.

Bistrian, 696 F.3d at 368-71 (citations and internal quotation marks omitted).

Buckley v. Kowalski, 2015 WL 179385, at *4-*5 (footnote omitted).

Instantly, Plaintiff's claim invokes the second scenario, except that Plaintiff does not even allege that he has been assaulted or even threatened; rather, he only implies that he may be assaulted based on speculations involving *his* past history of assaults and the possibility that the inmates involved may seek retribution for Plaintiff's past offenses.  See SAC, at ¶¶ 24, 41, 49. Yet, such theoretical or hypothetical claims fail to state a failure to protect claim under the Eighth Amendment.  See Luckey v. Martin, 2012 WL 665694, *6 (D.N.J. 2012)("In contrast, speculative failure-to-protect claims, asserting a purely 'theoretical'/'hypothetical' danger set forth a scenario to which prison officials cannot, by definition, be deliberately indifferent")(*citing cases*).  See also Buckley v. Kowalski, 2015 WL 179385, at *4 ("Paramount here, a prison official's awareness of overall violence among the inmate or of violent propensities (or history of violence) of particular inmates does not supply an inference of deliberate indifference.  See, e.g., Bistrian, 696 F.3d at 371 (the "risk that an inmate with a history of violence might attack another inmate" is too "speculative" to give rise to an inference of deliberate indifference); cf. Schwartz v. County of Montgomery, 843 F.Supp. 962, 971 (E.D.Pa. 1994), *aff'd*, 37 F.3d 1488 (3d Cir. 1994)").

Thus, even under a failure to protect analysis, the Corrections Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claim.

**C.   Corrections Defendant Reilly is entitled to judgment on Plaintiff's Eighth Amendment deliberate indifference claim based on Plaintiff's mental health treatment.**

At Count II, Plaintiff again relies on the Eighth Amendment to now advance claims solely against Corrections Defendant Reilly, whom Plaintiff alleges was deliberately indifferent

to his medical needs.  See SAC, at ¶¶ 55-59.  Corrections Defendant Reilly was the Licensed

Psychology Manager at SCI-Albion for some of the time that Plaintiff was confined at SCI-

Albion.  Plaintiff claims that Corrections Defendant Reilly "failed to provide adequate medical

treatment to Mr. Myer to treat his serious mental health disorders both at the time of and after the

removal of Mr. Myer from single cell status."  Id., at ¶ 56.

Initially, although Plaintiff's claim focuses on the denial of mental health treatment, such

claims are reviewed under the same Eighth Amendment standards as announced in Estelle v.

Gamble, 429 U.S. 97 (1976) and Farmer v. Brennan, 511 U.S. 825 (1994).  See, e.g., Parks v.

Argueta, 2016 WL 7856413, *8 (M.D.Pa. 2016), report and recommendation adopted, 2017 WL

194273 (M.D.Pa. 2017).  Accordingly,

> [i]n order for a plaintiff to establish an Eighth Amendment medical-care claim, he
> must establish that the defendants acted with deliberate indifference to his serious
> medical needs.  Estelle v. Gamble, 429 U.S. 97 (1976); see also Groman v. Twp.
> of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995)("Failure to provide medical care
> to a person in custody can rise to the level of a constitutional violation under §
> 1983 only if that failure rises to the level of deliberate indifference to that
> person's serious medical needs.").  Deliberate indifference is a subjective
> standard.  Farmer v. Brennan, 511 U.S. 825, 840 (1994).  'To act with deliberate
> indifference to serious medical needs is to recklessly disregard a substantial risk
> of serious harm.'  Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009).  To act
> with deliberate indifference, the prison official must have known of the
> substantial risk of serious harm and must have disregarded that risk by failing to
> take reasonable measures to abate it.  Farmer, 511 U.S. at 837.  '[T]he official
> must both be aware of facts from which the inference could be drawn that a
> substantial risk of serious harm exists, and he must also draw the inference.'  Id.
>
> The Third Circuit has found deliberate indifference where a prison official: '(1)
> knows of a prisoner's need for medical treatment but intentionally refuses to
> provide it; (2) delays necessary medical treatment based on a non-medical reason;
> or (3) prevents a prisoner from receiving needed or recommended medical
> treatment.'  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  The Third
> Circuit has also held that '[n]eedless suffering resulting from the denial of simple
> medical care, which does not serve any penological purpose ... violates the Eighth
> Amendment.'  Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003).
>
> At the same time, it is also clear that the mere misdiagnosis of a condition or
> medical need, or negligent treatment provided for a condition, is not actionable as
> a constitutional claim because medical malpractice is not a constitutional

> violation.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Singletary v.
> Pa. Dep't of Corr., 266 F.3d 186, 192 n. 2 (3d Cir. 2002)(claims of medical
> malpractice, absent evidence of a culpable state of mind, do not constitute
> deliberate indifference under the Eighth Amendment).    Instead, deliberate
> indifference represents a much higher standard, one that requires 'obduracy and
> wantonness, which has been likened to conduct that includes recklessness or a
> conscious disregard of a serious risk.' Rouse, 182 F.3d at 197 (quoting Whitley v.
> Albers, 475 U.S. 312, 319 (1986)).   'Indeed, prison authorities are accorded
> considerable latitude in the diagnosis and treatment of prisoners.'   Durmer v.
> O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993)(citations omitted).  Furthermore, if a
> plaintiff's claims amount to a simple disagreement with medical officials as to the
> course of treatment, this does not amount to deliberate indifference.  See Douglas
> v. Hill, 1996 WL 716278, at *7 (E.D.Pa. Dec. 6, 1996)(citing Boring v.
> Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987)).

Parks v. Argueta, 2016 WL 7856413, at *8-*9.

Initially, the summary judgment record reflects that the most significant allegations against Corrections Defendant Reilly concern an alleged suicide attempt in March of 2016, a POC placement in April of 2016 and an attempted assault on his cellmate in August of 2016. See SAC, at ¶¶ 31-32, 34, 36.  But see SMF, at ¶¶ 45-49 (April 4, 2016 POC Placement); 50-54 (April 22, 2016 POC Placement); 55-61 (August 21, 2016 Assault on Cellmate).

However, Corrections Defendant Reilly retired from the DOC effective December 31, 2015.  Reilly Decl., at ¶ 5.  Although he returned to part-time work at SCI-Albion as an annuitant in June of 2017, id., it is readily apparent that Corrections Defendant Reilly could not have been involved in any mental health treatment Plaintiff was or was not receiving in 2016.  See Reilly Decl., at ¶ 27.

Moreover, although Plaintiff's Z-code was removed in May of 2014, he was not directed to take a cellmate until November 5, 2014.  See SMF, at ¶¶ 30, 35.  Upon his placement in the Restricted Housing Unit for refusing to take a cellmate, Plaintiff had a mental health contact, which reflected that no mental health intervention or treatment was necessary.    See SMF, at ¶ 36.  Thereafter, on December 8, 2015, Corrections Defendant Reilly reviewed a Psychological

Evaluation of Annual L-5 Housing Evaluation prepared by PSS Kimberly Huyck.  This evaluation reflected that Plaintiff "carrie[d] a Mental Health Stability rating of 'B', which indicates that the inmate has a mental health history, but requires no mental health services at this time."  See Reilly Decl., at ¶ 26.  See also SMF Exhibit 37.

Thus, at the time Plaintiff was at SCI-Albion with Corrections Defendant Reilly before his retirement at the end of 2015, there was no indication from Plaintiff's records that Plaintiff was in need of any mental health treatment or intervention.  Furthermore, Plaintiff was returned to Z-code status on or about February 15, 2017.  See SMF, at ¶¶ 66-71.  Consequently, when Corrections Defendant Reilly returned to work at SCI-Albion in June of 2017, Plaintiff had been returned to his Z-code status.

Further, the summary judgment record reflects that Plaintiff was provided with access to mental health treatment while he was at SCI-Albion.  See Reilly Decl., at ¶¶ 7-12, 28-34; SMF, at ¶¶ 42-44.  Thus, Plaintiff cannot demonstrate that Corrections Defendant Reilly was deliberately indifferent to his mental health needs.  The summary judgment record reflects that the Psychology Department was involved in the reviews of Plaintiff's Z-code status.  SMF, at ¶¶ 21-28, 66-71.  Plaintiff also had access to both Psychology and Psychiatry while at SCI-Albion.  SMF, at ¶¶ 4-10, 16-17, 42-44.  While confined in the RHU, Plaintiff would receive weekly visits from his Counselor where he could discuss his medical and mental health needs; such needs could also be addressed during his regular PRC reviews.  Id.  Additionally, each time Plaintiff was assigned to the RHU, a Suicide Risk Indicators Checklist was reviewed by DOC staff and Plaintiff was subsequently provided with a psychological consult to determine whether there were any mental health factors that impacted his RHU placement.  See SMF Exhibits 6-7, 17, 44, 46, 49, 52.  During this time, Plaintiff also had regular mental health contacts with the

Psychology Department.  SMF, at ¶¶ 42-44.  Finally, when issues arose, Plaintiff was provided appropriate care and treatment.  For example, in the two POC placements, Plaintiff was afforded around the clock observation by both medical and mental health staff, and he was discharged only after being seen by a psychiatrist.  SMF, at ¶¶ 45-54.  See SMF Exhibits 42, 47.

Nevertheless, it was determined through these processes that Plaintiff's housing assignments were appropriate.  Consequently, in the absence of any countervailing evidence from Plaintiff, at best, he has alleged "a simple disagreement with medical officials as to the course of treatment."  However, under prevailing authority in the Third Circuit, this does not amount to deliberate indifference.  Indeed, as indicated above, deliberate indifference may be found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  Rouse v. Plantier, 182 F.3d at 197 (cited and quoted in Parks v. Argueta, 2016 WL 7856413, at *9).

Instantly, there is no evidence that Corrections Defendant Reilly ever refused to provide needed or recommended treatment for Plaintiff, that he ever delayed any needed or recommended treatment or that he ever prevented Plaintiff from receiving needed or recommended treatment.  Indeed, while Plaintiff has submitted a number of conclusory allegations with regard to the circumstances of his confinement and mental health treatment at SCI-Albion, the summary judgment reflects that he was afforded access to mental health treatment.  Again, this must all be considered along with the fact that Corrections Defendant Reilly was not even employed at SCI-Albion when the majority of the issues of which Plaintiff

complains occurred.   Thus, Corrections Defendant Reilly is entitled to summary judgment on

Plaintiff's Eighth amendment claim against him at Count II of the Second Amended Complaint.[3]

> **D.   The Corrections Defendants are entitled to judgment on Plaintiff's Fourteenth Amendment Substantive Due Process Claim.**

Finally, at Count III, Plaintiff asserts a Substantive Due Process Claim under the

Fourteenth Amendment.   See SAC, at ¶¶ 61-68.   Although Plaintiff invokes the Fourteenth

Amendment in his Second Amended Complaint, it does not appear that he is challenging

anything other than the loss of his Z-code status.   Thus, initially, any Fourteenth Amendment

claim should be dismissed under the explicit source rule.   Indeed, pursuant to that rule, "[w]hen

there is 'an explicit textual source of constitutional protection,' however, 'that Amendment, not

the more generalized notion of "substantive due process," must be the guide for analyzing these

claims.'"   Cook v. Wetzel, 2015 WL 2395390, *5 (E.D.Pa. 2015)(citing and quoting Graham v.

Connor, 490 U.S. 386, 395 (1989)).   See also Albright v. Oliver, 510 U.S. 266, 273 (1994).

Consequently, the removal of Plaintiff's Z-code is more appropriately analyzed under the Eighth

Amendment's explicit prohibition on cruel and unusual punishment, rather than as a claim of

substantive due process under the Fourteenth Amendment.

---

[3] And because the summary judgment record reflects that Plaintiff was receiving mental health contacts while he was in the RHU and otherwise under the care of a psychiatrist at various times, see SMF, at ¶¶ 42-54, there is no basis for finding that any other Corrections Defendant was deliberately indifferent to Plaintiff's mental health needs at this time. See, e.g., Rivera v. Rendell 2013 WL 1339273, *9 (M.D.Pa. 2013)("these defendants are prison administrators and cannot be considered to be deliberately indifferent to [plaintiff's] medical and/or mental health needs when they know him to be under the care and treatment of prison doctors. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). 'If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.' Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)(discussing Durmer, 991 F.2d at 69). '[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference.'   Id. at 236"). See also Cohee v. Coupe, 2015 WL 3787632, *5 (D.Del. 2015)(same).

To the extent that Plaintiff is asserting a procedural due process claim under the Fourteenth Amendment wholly independent of his Eighth Amendment claim, it is observed that inmates do not possess a liberty interest in their housing arrangements. See, e.g., Stephens v. Canino, 2014 WL 6698308, *2 (E.D.Pa. 2014)("The Due Process Clause does not guarantee a prisoner's placement in any particular prison during the term of imprisonment imposed")(citing Meachum v. Fano, 427 U.S. 215, 224 (1976)). Thus, "'inmates do not have a liberty interest in being single celled,' Rivera v. Rendell, 2013 WL 1339273, at *10 (M.D.Pa. 2013), and there is no due process violation if a single cell housing status is removed without a hearing. See, e.g. Carpenter v. Kloptoski, 2012 WL 911558, at *3 (M.D.Pa. 2012)("[Plaintiff], therefore, has no Fourteenth Amendment right to be housed in a single cell and his right to due process is not offended by any decision to place him in a cell with another inmate.")." Riley v. Grainey, 2014 WL 2094341, *5 (M.D.Pa. 2014). Cf. Oden v. Wall, 1995 WL 632381, *2 (7th Cir. 1995)(absent a serious medical need, an inmate has no constitutional right to a single cell)(cited in Walker v. Beard, 2007 WL 128011, *5 (W.D.Pa. 2007)).

Indeed, this Court recently addressed and rejected a similar due process claim under the Fourteenth Amendment as a matter of law in Mattis v. Department of Corrections, 2017 WL 6406884 (W.D.Pa. 2017), saying

> 'It is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification.' Keeling v. Barrager, 2014 WL 1338077, at *6 (M.D.Pa. Apr. 3, 2014), aff'd, 666 F.App'x 153 (3d Cir. 2016), citing Moody v. Daggett, 429 U.S. 78, 88 (1976); Montayne v. Haymes, 427 U.S. 236, 242 (1976). Inmates do not have a liberty interest in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed...and is not otherwise violative of the Constitution.' Moody, 429 U.S. at 88. '[T]he ultimate decision concerning an inmate's cell status is not in any way mandated by application of [DOC] policy, but rather is left to the discretion of prison personnel.' Hodges v. Wilson, 2008 WL 5049742, *2 (W.D.Pa. Nov. 2008), aff'd, 341 F.App'x 846 (3d Cir. 2009). Thus, an inmate 'has no protected

> liberty interest in receiving Z-code status and [a] due process claim is untenable.'
> Id. *citing* <u>Henry v. Wilson</u>, 2007 WL 2746717 *7 (W.D.Pa. September 17, 2007);
> <u>Austin v. Chesney</u>, 1995 WL 498720, at *3 (E.D.Pa. August 22, 1995)(holding
> that DOC policy did not create any protected liberty interest in Z-code status).
>   Because the removal of Plaintiff's Z-code does not implicate a recognized
> liberty interest, Plaintiff is unable to state a cognizable Fourteenth Amendment
> due process claim.

<u>Mattis v. Department of Corrections</u>, 2017 WL 6406884, at *13. <u>See also</u> <u>Booze v. Wetzel</u>, 2015 WL 5173937, *13 (M.D.Pa. 2015)(citing cases in support of the conclusion that "it is clear that an inmate like Booze has no constitutional right to a particular special housing status"). <u>Cf.</u> <u>Hodges v. Wilson</u>, 341 F.App'x 846, 849 (3d Cir. 2009)("we agree with the District Court that Hodges has not been subjected to atypical and significant hardship because his "Z" code status has been revoked and he must now share a cell").

Finally, in examining the explicit allegations in the Second Amended Complaint in this regard, the claims are entirely speculative, based on Plaintiff's belief that he would not have taken certain actions[4] and that this mental health issues would not have been exacerbated but for the removal of his Z-code. However, such speculative allegations –particularly in the absence of any competent evidence linking these events– fail to establish a violation of Plaintiff's due process rights. Accordingly, any Fourteenth Amendment claim should also be dismissed.

---

[4] Such as committing misconducts which caused him to be placed in Disciplinary Custody and attempting suicide. <u>See</u> SAC, at ¶ 62a) <u>and</u> 62d).

## IV.  <u>CONCLUSION</u>

WHEREFORE, it is respectfully requested that the instant motion be granted and that judgment be entered in favor of the Corrections Defendants, Nancy Giroux, David E. Zetwo, Steven Reilly, James Bentley and Mike Brumagin, and against Plaintiff, Robert Myer, on all claims in the Second Amended Complaint.

Respectfully submitted,

JOSH SHAPIRO
Attorney General


   s/ Scott A. Bradley

Office of Attorney General          Scott A. Bradley
6th Floor, Manor Complex          Senior Deputy Attorney General
564 Forbes Avenue                 Attorney I.D. No. 44627
Pittsburgh, PA 15219
Phone: (412) 565-3586            Keli M. Neary
Fax:   (412) 565-3019            Acting Chief Deputy Attorney General

Date:  February 21, 2018